**Bruce K. ESCO and John B. Williams, Appellants,**

v.

**The STATE Of Texas, Appellee.**

**No. 61501.**

Court of Criminal Appeals of Texas, Panel No. 1.

Dec. 15, 1982.

C.R. Kit Bramblett, El Paso, for appellants.

Ronald Earle, Dist. Atty. & Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ROBERTS, CLINTON and McCORMICK, JJ.

## OPINION

CLINTON, Judge.

These are appeals from a judgment of conviction for aggravated robbery upon a jury finding of guilty. Sentence was assessed for each defendant at 65 years.

Appellants present three grounds of error. The sufficiency of the evidence is not challenged.

On May 7, 1978, at 2:35 a.m. a 1972 Oldsmobile Cutlass was stopped by a Department of Public Safety Trooper for a routine traffic violation at a point off Interstate 10 approximately nine miles east of Junction.[1] While Trooper Overstreet was writing up a traffic ticket, Deputy Chapman ran a "wanted check" on the vehicle's Texas license plate number BGZ 610. The local dispatcher responded that a request for a statewide broadcast had been issued by recent teletype, as follows:

"REQUEST FOR STATEWIDE BROADCAST

PD AUSTIN 5-7-78

ATTN. PD EL PASO

ARMED ROBBERY OCCURRED THIS CITY INVOLVING OFF-WHITE 1970 CHEV 78TX LIC/BGZ610 OCCUPIED BY 2 W/M.S. 6.00, SLENDER BUILD, FALSE BEARDS AND MAKE-UP, ARMED WITH SHOT GUN AND PISTOL. VEHICLE REGISTERED TO RUBY WILLIAMS 2500 MORELAND 6, EL PASO, TX. SHOTS WERE FIRED IN ROBBERY... NO INJURIES. PLEASE CHECK ADDRESS AND NAME YOUR FILES FOR POSSIBLE INVOLVEMENT OR STOLEN VEHICLE.

SGT D GAMBRELL/ROBBERY DETAIL

PD. AUSTIN RJC 070056 CDT"

Upon receiving this report from the dispatcher, appellants were removed from the automobile, handcuffed and read their rights.

Having thus arrested and secured appellants, the deputies searched the passenger compartment and then the trunk of the automobile. In the glove box were found a pistol, some shells for it and also shotgun shells; on the back seat were a duffel bag containing numerous rolls of quarters and a box of, among other items, fake beards and mustaches. A search of the trunk produced a briefcase inside which was a "large" amount of currency. Those tangi-

---

**1.** Kimble County Deputy Sheriff Gary Chapman, who was riding with DPS Trooper Douglas Overstreet, stated that radar clocked Williams' vehicle traveling at a speed of 90 m.p.h. in a 55 m.p.h. zone.

ble materials as well as the other items were seized and later released to the Austin Police Department.

Both appellants were charged and indicted for aggravated robbery in a Safeway Store on West 35th Street in Austin.

Prior to trial a hearing was held on appellants' motion to suppress, presenting their theory that the searches they saw as incident to arrest were wrongful in that the initial warrantless arrest was unlawful. The hearing ended when, without pronouncing a ruling, the judge assented to appellants' request for leave to file a written brief. *Inter alia*, the brief contends the State had failed to show probable cause for arrest and search.[2]

■ Appellants were tried jointly and represented by the same counsel. During the presentation of the State's case, appellants renewed their objections to the admissibility of the seized evidence. Their objections were once again overruled. During the defense's case, appellant Williams testified in his own behalf and admitted his involvement in the aggravated robbery in the Safeway Store.[3] By so doing, appellant Williams waived his right to complain on appeal of the illegality of the arrest and subsequent search and seizure. *Daniels v. State*, 573 S.W.2d 21 (Tex.Cr.App.1978). Consequently, these issues are preserved for appeal only with regard to appellant Esco since he did not testify. We will now address the merits of those grounds of error.

In appellant's first ground of error he contends that the warrantless arrest was illegal. It is appellant's position that the deputies lacked probable cause to effectu-

ate the arrest because the police teletype contained no indication as to reliability and credibility of the information it communicated.

Facts similar to those in the instant case have been presented to the Court before in *Law v. State*, 574 S.W.2d 82 (Tex.Cr.App. 1978); *Myre v. State*, 545 S.W.2d 820 (Tex. Cr.App.1977); *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975); *Turner v. State*, 499 S.W.2d 182 (Tex.Cr.App.1973). Therein we have held that radioed police broadcasts and teletypes, based on probable cause, reporting a felony and a description of the suspect and the vehicle are sufficient to satisfy the requirement of probable cause, and of Article 14.04, V.A.C. C.P.

■ The underlying probable cause for the police teletype in this case comes from the witnesses at the scene giving their names to Officer Kenneth Williams of the Austin Police Department. Officer Williams and his partner, Sgt. Raines were the first to arrive at the scene. Upon arrival at the Safeway, Officer Williams checked to see if anyone had been injured. Upon learning that no one had been hurt, Williams had the manager lock all the doors except one. Officer Williams and Sgt. Raines began interviewing all the persons remaining in the store. After all the witnesses had been interviewed, Officer Williams and Sgt. Raines compiled all the descriptions of the two suspects and the vehicle. Then, Officer Williams went to his car radio and broadcast the description to the dispatcher. As the Court has consistently stated, where a named informant is a private citizen whose only contact with the

---

**2.** Over his signature denying the motion was written:

"8/10/78

Motion Denied"

Yet, the time stamp of the district clerk shows a filing "9/11/78 at 10:00 A.M." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.) The latter date coincides with the trial setting indicated at the close of the pretrial hearing. In view of our disposition we need not consider appellants' third ground of error complaining of a denial of due process because, as they see it, the trial

court acted adversely before receipt of the written brief.

**3.** Appellant Williams took the stand against the advice of trial counsel. The record reveals that trial counsel was not even aware of his client's desire to testify in his own behalf until just moments before he took the stand. As his confederate Williams implicated one Michael Davis, whose whereabouts were unknown. If Williams is to be believed appellant Esco was not involved in the robbery.

police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent. *Wood v. State,* 573 S.W.2d 207, n. 2 (Tex.Cr.App.1978); *Frazier v. State,* 480 S.W.2d 375 (Tex.Cr.App.1972). Under the circumstances described, the officers were authorized to arrest appellants solely on the basis of the teletype.[4] Ground of error number one is overruled.

■ Appellants' second and related ground of error contends that the trial court erred in admitting evidence seized as a result of the warrantless arrest.

We note at the outset that appellant Esco lacks "standing" to complain of the search of the interior of the automobile. The record reveals that the car was owned by appellant Williams. Appellant Esco failed to establish any prejudice to his *own* constitutional rights because he was not a person aggrieved by the unlawful search and seizure. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); see *Manry v. State,* 621 S.W.2d 619 (Tex.Cr.App. 1981). Since appellant Williams waived his right to complain of the search by admitting his complicity in the offense, it is unnecessary for us to decide whether the intrusion into the interior of the automobile

violated rights secured to appellant Esco by the Fourth and Fourteenth Amendments.[5]

■ However, we quickly observe that the search of the interior of the Williams automobile upon probable cause to believe there were fruits or instrumentalities of the robbery therein is not barred by constitutional protections against unreasonable searches and seizures. *Chambers v. Maroney,* 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–1981, 26 L.Ed.2d 419 (1970).

■ The only problem that remains is the conduct of the officers in opening on the spot the latched briefcase belonging to appellant Esco found in the trunk. This Court has held that one similarly situated has a legitimate expectation of privacy in the contents of such a case.[6] *Araj v. State,* 592 S.W.2d 603, 604 (Tex.Cr.App. 1979); see *Nastu v. State,* 589 S.W.2d 434, 440 n. 1 (Tex.Cr.App.1979), recognizing the rulings of the Supreme Court, first in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and then in *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). We find that Esco did have a legitimate expectation of privacy in contents of his latched brief-

---

**4.** The officers near Junction were entitled to rely on the teletype in making their arrest subject, however, to a "condition subsequent" that it "turns out to be true" the Austin officers who initiated the communication were acting with probable cause. See *Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971).

**5.** The matters at issue were ruled in the trial court before the Supreme Court of the United States decided to modify the "standing" rule enunciated in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), in favor of "a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect," *Rakas v. Illinois,* supra, 439 U.S. at 140, 99 S.Ct. at 428. The Supreme Court reasoned that since a glove compartment and the area under the seat of an automobile in which one is a mere passenger are "areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy," such a complaining passenger must make a showing that he had some

legitimate expectation of privacy in those areas. *Id.,* at 148–149, 99 S.Ct. at 432–433.

Whatever reconciliation was indicated in *Rakas, Jones* was expressly abandoned by the Supreme Court in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Although some have not done so, that a majority of this Court seems to have accepted that development was noticed in *Goehring v. State,* 627 S.W.2d 159, 164 n. 9 (Tex.Cr.App.1982). However, no doubt the bench and the bar would welcome consideration by the Court En Banc, particularly in light of continued adherence to the principles of *Jones* by some other jurisdictions.

**6.** The contents of the briefcase vindicate the general proposition that legitimate expectation of privacy attaches to that kind of container: combs, brushes, a jar of cocoa butter, women's underclothing, shaving gear, a hunting knife and miscellaneous papers belonging to appellant Esco, as well as the paper sack of currency—which currency, however, appellant Williams claimed as his own.

case located in the trunk of the car. That finding, though, does not solve all of the problem.

Trooper Overstreet testified that he and Deputy Chapman were "looking for any and all evidence of armed robbery" that might be found. Before they got to the trunk of the car the officers had systematically found and taken from the glove compartment and the interior of the car every item described in the teletyped bulletin, except a shotgun; they had also removed items not so described, *viz:* at some point not clearly specified taken from the person of Williams was $497 and from Esco $204, and from a pillowcase inside a duffle bag found on the back seat of the car many ten dollar bankrolls of quarters.[7] Not yet finding a shotgun, the officers reasonably could look for it in the trunk.

However, there was not a shotgun in the trunk—only a "sack" with a CB radio in it and Esco's attache case. When the Supreme Court ultimately rejected its "mere evidence" formulation in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), it still insisted that "the intrusions are nevertheless made after fulfilling the probable cause and particularity requirements of the Fourth Amendment..." *id.*, at 309, 87 S.Ct. at 1651.

We are unable to find any cause to believe that the case might contain a shotgun or any other fruit or instrumentality of the robbery committed hours earlier in Austin that the officers had not already seized. We find that appellant Esco did not forfeit his expectation of privacy in contents of the attache case merely because it was found in the trunk.

Relying on a recent opinion of the Supreme Court, our dissenting Brother would have it that "the officers had developed

probable cause to believe the contraband taken during the course of the robbery would be located in the automobile." But in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), as we understand it, the Supreme Court did not undertake to authorize a general exploratory search of an automobile for whatever might turn up. Indeed, explicating the new rule adopted by a majority of the Supreme Court, Justice Stevens wrote for it:

> "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, *it is defined by the object of the search* and the *places* in which there is *probable cause to believe that it may be found.* Just as *probable cause to believe* that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, *probable cause to believe* that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. *Probable cause to believe* that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." [8]

*Ross*, supra, 102 S.Ct. at 2172.

The officers conceded that when they got to the trunk of the car, their quest was still evidentiary in nature with no indication of what they reasonably believe remained. They had found everything mentioned in Austin's teletype but a shotgun. There was no pretension of probable cause to believe that appellant Esco's attache case contained a shotgun—indeed, to believe given its small size that the case was capable of containing one.[9] The State has not shown the case was one of "the places in which there is probable cause to believe

---

7. An inventory later compiled lumped together the dollar amount of quarters and currency not attributed specifically to either appellant as approximately $1299.

8. All emphasis is mine unless otherwise indicated.

9. In the record is State's Exhibit No. 52, admitted over objection consistent with reasons stated

in appellants' motion to suppress under discussion. It is a photograph portraying in color all material evidentiary items taken from the car, including an open attache case, along with a shotgun that was not but was found along the roadway nearby. The shotgun is more than twice as long as the case is wide.

that [the object of the search] may be found," *Ross, ibid.*

To the extent found above the motion to suppress should have been granted and evidence of contents of the attache case ruled out by the trial court, and ground of error two in that respect is sustained.

The judgment of conviction as to appellant Williams is affirmed, but as to appellant Esco is reversed and the cause remanded.

McCORMICK, Judge, dissenting.

The recent United States Supreme Court decision of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is sealed somewhere within it "may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.'" 102 S.Ct. at 2159. The officers in *Ross* searched the trunk of a car after receiving information that an individual was selling narcotics which he kept in the trunk of his car. The officers' search of the trunk revealed a closed brown paper bag and a zippered red leather pouch. In the bag they found a number of glassine bags containing a white powder, later determined to be heroin. When they unzipped the pouch, they discovered $3,200 in cash.

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

"This rule applies equally to all containers, as indeed we believe it must. One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between 'worthy' and 'unworthy' containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other. The central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case. (footnotes omitted) [456 U.S. at 820, 822, 102 S.Ct. at 2170, 2171]

" * * *

"The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. [456 U.S. at 824, 102 S.Ct. at 2172]

" * * *

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the

object of the search." 456 U.S. at 825, 102 S.Ct. at 2172.

In the case at bar, the officers had developed probable cause to believe the contraband taken during the course of the robbery would be located in the automobile. Thus, they were authorized to search the entire automobile and any containers therein, where the contraband could have been concealed. The search of Esco's briefcase was proper and the trial court properly denied appellant Esco's motion to suppress.

I dissent.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

■ Bruce K. Esco and John B. Williams, appellants, were convicted of jointly committing an armed robbery of an employee of a Safeway store located in Austin. On original submission, a majority of a panel of this Court[1] affirmed appellant Williams' conviction, but ordered the conviction of appellant Esco set aside after it found that the police had unlawfully conducted a search of Esco's attache or brief case.

Neither appellant challenges the panel majority decision. However, the State asserts in its motion for rehearing that the reason the panel majority gave for reversing Esco's conviction was legally erroneous. We granted the State's motion to make the determination whether the panel majority correctly reversed Esco's conviction. After careful review of the facts of the case, as well as the law, we find that the State is correct; the majority of the panel erred in holding that the officers unlawfully searched Esco's attache or brief case.

1. This Court no longer has panels; all cases are now decided En Banc.

2. In pertinent part, the "BOLO" message stated the following:

We find that a brief recitation of the facts may be helpful to the reader to better understand why we sustain the State's contention that the search of Esco's attache or brief case was lawful.

The facts reflect that on May 6, 1978, at approximately 9:00 o'clock p.m., two unidentified white male persons, who were then wearing false beards, sunglasses, and gloves, as well as one being armed with a pistol and the other with a sawed-off shotgun, robbed an employee of a Safeway store located in Austin. After committing the robbery, the robbers fled in a motor vehicle. The police were notified, and thereafter obtained from witnesses descriptions of the robbers and the license plate number of the vehicle the robbers had fled in. A member of the Austin Police Department caused a statewide "BOLO" message to be issued.[2]

Approximately 5½ hours later, and 133 miles west of Austin, a Department of Public Safety trooper, who was then working his radar unit from his vehicle which was situated on Interstate 10 near the Segovia cut-off, stopped a motor vehicle because its driver, who was later identified to be appellant Williams, had exceeded the speed limit. Appellant Esco was shown to be the sole passenger in Williams' vehicle.

While the trooper was discussing with Williams the speeding violation, a deputy sheriff, who had been riding with the trooper, contacted a dispatcher with the Kimble County Sheriff's Department and gave her the license plate number of Williams' vehicle, so she could conduct a "wanted and warrants check" on the license plate number.

The dispatcher recalled that she had earlier received a "BOLO" message which referred to the same license plate number the deputy had related to her. After retrieving the "BOLO" message, she informed the

ARMED ROBBERY OCCURRED THIS CITY INVOLVING OFF–WHITE 1970 CHEV 78 TX LIC/BGZ610 OCCUPIED BY 2 W/M.S. 6.00, SLENDER BUILD, FALSE BEARDS AND MAKE–UP, ARMED WITH SHOT GUN AND PISTOL...

deputy sheriff of its contents. Soon thereafter, both appellants were arrested by the trooper and the deputy sheriff.

Thereafter, the officers conducted a general exploratory search of the interior of the vehicle, looking for any evidence that might have been related to the robbery that had occurred in Austin. They recovered "from the glove compartment and the interior of the car every item described in the teletyped bulletin, except a shotgun ..." (Panel Majority Opinion, page 362).

The officers then opened the trunk of the vehicle. There, in plain view, they saw a briefcase or attache case, which they opened. Found inside of the case was money, as well as personal papers, which belonged to appellant Esco. The items were seized and, over objection, were introduced into evidence at trial.

The officers never found in the interior or the trunk portions of the vehicle, or inside any containers therein, either a shotgun in its manufactured state, a sawed-off shotgun, a disassembled shotgun, or a disassembled sawed-off shotgun.

From a photograph that is in the record, which partially depicts the attache or brief case, we are able to conclude that the case appears to be of average size, that is, approximately 17 inches in length, 13 inches in width, and almost 3 inches in depth, which we find could be more than sufficient in size to contain an average size disassembled sawed-off shotgun. State's exhibit number 11, a sawed-off shotgun, which was identified by the complainant, "This looks like the shotgun used by Robber number 2," was admitted into evidence. We have obtained possession of this exhibit and, using an average size attache case, after disassembling the gun, find it easily fits inside of an average size attache case.

As previously pointed out, we have concluded that the panel majority opinion erred in holding that the officers were without lawful authority to open appellant Esco's attache or brief case. Notwithstanding this conclusion, with which we disagree, we find the panel majority opinion did make several holdings with which

we agree, namely: "the officers were authorized to arrest appellants solely on the basis of the teletype message"; appellant Esco lacked "standing" to complain of the search of the interior of the vehicle; "Esco [had] a legitimate expectation of privacy in the contents of *his* latched briefcase [that was] located in the trunk of the car"; and the police officers were entitled to open the trunk lid of the vehicle and view the attache or brief case that was then in plain view.

In reversing Esco's conviction, the majority of the panel held that because it was "unable to find any cause to believe that the [attache or brief] case might contain a shotgun or any other fruit or instrumentality of the robbery committed hours earlier in Austin that the officers had not already seized," the opening of the case and the seizing of the contents that were inside of the case were both unlawful. We are unable to agree with this holding.

We find that the majority of the panel did not accurately apply the meaning of the legal term, "probable cause," in a flexible, common-sense manner. Recently, in *Texas v. Brown*, 460 U.S. 730, —, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983), the Supreme Court made the following observation: "[Probable cause] merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' ... that certain items may be ... useful as evidence of a crime; it does not demand any showing that such a belief is correct or more likely true than false..." *Texas v. Brown*, 460 U.S. 730, —, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983).

As the majority panel opinion pointed out, when the officers opened the trunk lid to the vehicle, they had not recovered a "shotgun," but "had found everything [else that had been] mentioned in Austin's teletype ..."

We believe that it is reasonable to assume that the term "shotgun," that was used in the teletyped message, could have referred just as easily to a disassembled sawed-off shotgun as to a shotgun in its manufactured state. By statute, a sawed-

off shotgun in Texas is a type of ordinance that has a barrel length of less than 18 inches. V.T.C.A., Penal Code, Section 46.01(10).

Common knowledge teaches that not only can a sawed-off shotgun be a very compact weapon, but at close range, even without carefully aiming it, it can have a devastating effect. In size, it is common knowledge that the combined stock, trigger mechanism, and modified barrel of the average sawed-off shotgun may be less than two feet in length. As to just how small it might become, history teaches us that the infamous Clyde Barrow perfected a "quick draw" with a sawed-off shotgun that was contained in a special holster sewn into his trousers. John Toland, *The Dillinger Days* (New York: Random House, 1963), at page 39.

Therefore, we find and hold from the facts of this case that the prosecution established that a reasonable person could have believed that a disassembled sawed-off shotgun might have been inside of the attache or brief case. Esco, of course, was free to establish the contrary, but he did not.

Of course, whether the officers had reasonable belief at the time they opened the attache or brief case that the case contained a disassembled shotgun cannot be answered by what they saw in the case after they opened the case, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Adams v. State*, 137 Tex.Cr.R. 43, 128 S.W.2d 41 (1939), because such must be answered through the eyes of a reasonable person based upon the facts and circumstances as they existed before the attache or brief case was opened by the officers.

Thus, the fact that a disassembled sawed-off shotgun was not found inside of the case is irrelevant to the question. Instead, the question becomes, whether there was a reasonable probability that the case might contain a disassembled sawed-off shotgun. We answer the question in the affirmative. The opening of the case and the seizure of its contents by the officers were not unlawful.

We acknowledge that neither of the officers articulated that the reason they opened the case was because they were looking for a disassembled sawed-off shotgun. However, the mere fact they did not give the right reason is not controlling. If their decision was correct on any theory of law applicable to the case, it is sufficient as a matter of law. In this instance, the officers did give the wrong reason why they opened the case, but their decision is supported by the theory of law that they had probable cause to open the case without a warrant.

The State's motion for rehearing is granted and appellant Esco's conviction is affirmed.

ODOM, J., concurs in the result.

ONION, P.J., and CLINTON, J., dissent.

TOM G. DAVIS, J., not participating.

McCORMICK, Judge, concurring.

For the reasons set forth in my dissenting opinion on original submission, I concur in the judgment of the Court.