ACCEPTED
01-14-00461-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/18/2015 4:09:55 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00461-CR

In the
## Court of Appeals
For the
## First District of Texas
At Houston

——————◆——————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/18/2015 4:09:55 PM

CHRISTOPHER A. PRINE
Clerk

No. 1352806
In the 228th Criminal District Court
Of Harris County, Texas

——————◆——————

## PATRICK GLENN SOWELLS, JR.

*Appellant*

V.

## THE STATE OF TEXAS

*Appellee*

——————◆——————

## STATE'S APPELLATE BRIEF

——————◆——————

DEVON ANDERSON
District Attorney
Harris County, Texas

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

ALEXIS MITCHELL
Assistant District Attorney
Harris County, Texas

Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713·755·5826

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

*Complainant, victim, or aggrieved party:*

**Lauren McBride Deberry**

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County
**Bridget Holloway** — Assistant District Attorney on appeal
**Alexis Mitchell** — Assistant District Attorney at trial

*Appellant or criminal defendant:*

**Patrick Glenn Sowells, Jr.**

*Counsel for Appellant:*

**Alexander Bunin** — Public Defender of Harris County
**Mark C. Kratovil** —Assistant Public Defender on appeal
**Craig Still** —Assistant Public Defender at trial
**Te'iva Bell** —Assistant Public Defender at trial

*Trial Judge:*

**Honorable Marc Carter** — Presiding Judge

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT.................................................................1

IDENTIFICATION OF THE PARTIES ........................................................................1

TABLE OF CONTENTS...............................................................................................2

INDEX OF AUTHORITIES .........................................................................................3

STATEMENT OF THE CASE ......................................................................................6

STATEMENT OF FACTS .............................................................................................6

SUMMARY OF THE ARGUMENT..............................................................................8

REPLY TO APPELLANT'S FIRST ISSUE PRESENTED .........................................9

    Standard of Review .................................................................................................9
    Relevant Facts & Procedures ...............................................................................10
        A.    Timeline ...................................................................................10
        B.    Suppression Hearing ..............................................................12
        C.    Evidence at Trial.....................................................................15
    Analysis ..................................................................................................................16
        A.    Probable Cause Extended to Storage Lot ................................16
        B.    Sergeant Wilson's Search of the Car was Harmless...............20

REPLY TO APPELLANT'S SECOND ISSUE PRESENTED.......................................22

    Relevant Facts & Procedures ...............................................................................22
    Applicable Authority .............................................................................................23
    Analysis ..................................................................................................................25

CONCLUSION ...........................................................................................................28

CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE ......................29

# INDEX OF AUTHORITIES

## CASES

*Adams v. Williams,*
407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ............................................................18

*Alabama v. White,*
496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) .....................................................18

*Amador v. State,*
221 S.W.3d 666 (Tex. Crim. App. 2007) .....................................................................9, 10

*Brother v. State,*
166 S.W.3d 255 (Tex. Crim. App. 2005) ..........................................................................18

*Chambers v. Maroney,*
399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.3d 419 (1970) ........................................................20

*Colorado v. Bannister,*
449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) ................................................................17

*Crawford v. Washington,*
541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) .....................................................24

*Ellis v. State,*
705 S.W.2d 261
(Tex. App. —San Antonio 1986, no pet.) ........................................................................17

*Esco v. State,*
668 S.W.2d 358 (Tex. Crim. App. 1982) .........................................................................18

*Florida v. Meyers,*
466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) .................................................19, 20

*Gutierrez v. State,*
221 S.W.3d 680 (Tex. Crim. App. 2007) ....................................................................17, 20

*Guzman v. State,*
955 S.W.2d 85 (Tex. Crim. App. 1997) ...............................................................................9

*Johnson v. State,*
  68 S.W.3d 644 (Tex. Crim. App. 2002)...................................................... 10

*Keehn v. State,*
  279 S.W.3d 330 (Tex. Crim. App. 2009) ................................................. 16

*Langham v. State,*
  305 S.W.3d 568 (Tex. Crim. App. 2010)...............................................21, 24

*Marras v. State,*
  741 S.W.2d 395 (Tex. Crim. App. 1987)................................................... 27

*Mayfield v. State,*
  848 S.W.2d 816
  (Tex. App. —Corpus Christi 1993, pet. ref'd)..........................................27

*Michigan v. Thomas,*
  458 U.S.259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) .......................17, 19, 20

*Montanez v. State,*
  195 S.W.3d 101 (Tex. Crim. App. 2006)................................................... 10

*Nelson v. State,*
  855 S.W.2d 26
  (Tex. App. —El Paso 1993, no pet.) .........................................................18

*Romero v. State,*
  800 S.W.2d 539 (Tex. Crim. App.1 990) .....................................................9

*State v. Duarte,*
  389 S.W.3d 349 (Tex. Crim. App. 2012)....................................................18

*State v. Kelly,*
  204 S.W.3d 808 (Tex. Crim. App. 2006) ................................................... 10

*State v. Ross,*
  32 S.W.3d 853 (Tex. Crim. App. 2000) .......................................................9

*Tennessee v. Street,*
  471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)................................24

*Uniroyal Goodrich Tire Co. v. Martinez,*
928 S.W.2d 64
(Tex. App. —San Antonio 1995), *aff'd*, 977 S.W.2d 328 (Tex. 1998) ..................... 27

*United States v. Johnson,*
587 F.3d 625 (4th Cir. 2009) ........................................................................... 25

*United States v. Palacious,*
677 F.3d 234 (4th Cir. 2012) ..................................................................... 25, 27

*United States v. Sparks,*
291 F.3d 683 (10th Cir. 2002) ........................................................................ 17

*Wall v. State,*
184 S.W.3d 730 (Tex. Crim. App. 2006) ......................................................... 24

*Wiede v. State,*
214 S.W.3d 17 (Tex. Crim. App. 2007) ........................................................ 9, 10

## RULES

TEX. R. APP. P. 38.2(a)(1)(A) ........................................................................... 1

TEX. R. APP. P. 39.1 ........................................................................................ 1

TEX. R. APP. P. 44.2(a) ................................................................................... 21

TEX. R. APP. P. 9.4(g) ...................................................................................... 1

TEX. R. EVID. 703 ......................................................................................... 26

TEX. R. EVID. 705 ......................................................................................... 26

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. VI ................................................................................... 24

TO THE HONORABLE COURT OF APPEALS:

## STATEMENT OF THE CASE

Appellant, Patrick Glenn Sowells, Jr., was charged with aggravated robbery. The charge was enhanced with a prior felony conviction for felon in possession of a weapon. (CR at 13). Appellant entered a plea of "not guilty." (RRIII at 9). After the jury found appellant guilty as charged, the trial court sentenced him to confinement for 35 years. (CR at 225-26; RRIV at 36; RRV at 67). A written notice of appeal was timely filed. (CR at 230).

———————◆———————

## STATEMENT OF FACTS

Appellant was a leader in a criminal gang known as Forum Park Crips. (RRV at 26). The gang was known for selling narcotics and committing robberies and murders. (RRV at 26). In appellant's own words: "I sell drugs. I sell bitches. I make money." (RRV at 40; State's Exhibit 35).

Late night on March 25, 2012, Lauren Deberry left a club with Cruse Williams to go to a nearby motel. (RRIII at 58, 67-69). While getting out of the

car in the parking lot, appellant and Joshua Johnson[1] jumped out of a goldish colored Chrysler with guns and ran towards them demanding they give them everything. (RRV at 69-70, 88). The men took her bag of clothing, purse, wallet, cash, ID, and car keys. (RRV at 70). Williams was told to strip down to his boxers. Appellant and Johnson took his clothes (shirt, jeans, belt, and shoes), as well as his cash and jewelry. (RRV at 71). Unclothed, Williams took off running and either appellant or Johnson shot two bullets in his direction. Williams was not shot. (RRV at 71-72; State's Exhibit 3). Appellant was arrested after it became clear that his car was used in several robberies and Deberry tentatively identified him in a photo array. (RRV at 79, 85).

————————◆————————

---

[1] Johnson testified that he and appellant committed the aggravated robbery. (RRV at 87-89).

# SUMMARY OF THE ARGUMENT

*Reply to Appellant's First Issue Presented on Appeal:*

Because probable cause does not stop once a car becomes immobile, and because any error in admitting the evidence seized from that search was harmless, the trial court did not err in denying appellant's motion to suppress the evidence seized from that search (extraneous victims' car keys and necklace).

*Reply to Appellant's Second Issue Presented on Appeal:*

Because Texas Rules of Evidence 703 and 705 contemplate the use of inadmissible evidence for an expert to use with his training and experience to form an opinion, and, assuming some evidence in the exhibit comes from testimonial hearsay, because the Confrontation Clause does not prevent witnesses from offering their independent judgments based in part on inadmissible evidence, the trial court did not err in admitting the gist of the expert's testimony in a helpful format (State's Exhibit 60).

———————◆———————

8

# REPLY TO APPELLANT'S FIRST ISSUE PRESENTED

In his first issue presented on appeal, appellant argues the trial court erred in denying his motion to suppress evidence obtained from the warrantless search of his impounded car days after his arrest. Because probable cause does not stop once a car becomes immobile, and because any error in admitting the evidence seized from that search was harmless, the trial court did not err in denying appellant's motion to suppress the evidence seized from that search (extraneous victims' car keys and necklace).

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress evidence is reviewed under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, this Court is not to engage in its own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App.1 990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, this Court gives almost total deference to the trial court's rulings on (1) questions

of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Stated another way, when reviewing the trial court's ruling on a motion to suppress, this Court must view the evidence in the light most favorable to the trial court's ruling. *See Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

## RELEVANT FACTS & PROCEDURES

### A. Timeline

The following timeline shows the events that established appellant as a suspect of several robberies:

> March 23: Mohammad Abdlahi was robbed. Abdlahi and a friend drove to a parking lot of a club and learned it was closed. Two men in a Chrysler 300 told them to go to another club. When they drove to that club, they saw the Chrysler 300 had followed them there. They did not go into that club and instead drove to an apartment complex. Again the Chrysler 300 was there and the two men approached them with a gun in the parking lot and told them to get out of the car. Abdlahi and his friend were told to take off their shirt and pants. They were told to stay on the ground or they would be shot. Abdlahi's wallet, phone, watch, and Infinity

car were taken. Abdlahi gave officers a description of the car appellant and Johnson jumped out of. Abdlahi later tentatively identified appellant in a photo array as one of the men who robbed him. (RRIII at 145-56).

An abandoned gold car, with the door open, located at 9797 Meadowglen. A handgun was seized from the front passenger floorboard before the car was towed. (RRIII at 123-24). Officer's unable to get registered owner's name from the expired paper plates. Several names found inside the glove compartment, including appellant's name was on a traffic ticket inside the car. (RRIII at 125).

March 24?: Someone gets the car out of storage lot.

March 25: After leaving a club and driving to a motel, Deberry and Williams were robbed in the parking lot. Two men who jumped out of a goldish Chrysler with guns told Williams to take off his clothes while they were robbed of their property. (RRIII at 69-85).

March 26: Cops were flagged down in a club parking lot. An unidentified man informed the officers that appellant and Johnson had just pulled a gun on them and tried to rob them. Appellant and Johnson were arrested after a gun was recovered. Appellant's car was towed to police impoundment lot and inventoried. Appellant was charged with unlawfully carrying a weapon and possession of a controlled substance. (RRIII at 24-29).

March 28:     Abdlahi's Infinity was recovered from an apartment complex at 9797 Meadowglen. Sergeant Wilson, who was investigating Abdlahi's case, learned from apartment management that earlier a brownish Chrysler 300 with a gun on the passenger floorboard had been reported abandoned at the same apartment complex. (RRIII at 122-28, 161).

March 29:     Sergeant Wilson learns that a similar car has been impounded and searches that car. The search yielded Abdlahi's property (keys to the Infinity and a necklace) and information with appellant's name on it. (RRIII at 136-38).

?:            At some point, someone gets the car out of storage lot.

April 19:     Appellant flees the Chrysler when officers attempted to arrest him on an open warrant. A gun is found in the front passenger seat. He is captured and charged with felon in possession of a weapon. Appellant admitted to Sergeant Wilson that the Chrysler was his car. (RRIII at 163-69).

## B. Suppression Hearing

Officer A. Schattle testified he was flagged down in a club parking lot by a guy who pointed at appellant and Johnson and said, "The guy just pulled a gun on me. He tried to rob me." (RRIII at 25). The officer and his partner then went towards appellant and Johnson. Appellant jumped in a Chrysler "30M" (according to the officer's report) and Johnson hung out by a parked car. (RRIII at 26).

Officer Schattle order appellant out of his car. The car rolled until it stopped at a curb. (RRIII at 26). Appellant and Johnson were detained in the back of the patrol car while the officers investigated. (RRIII at 26). The officers located a gun under the car next to where appellant was initially parked. (RRIII at 26). Officer Schattle also saw a baby bottle in plain view in the car. (RRIII at 27-28). "It's usually codeine [inside the bottle]. People put it in there to say that's it's juice for their kid, but it's in fact codeine syrup." The baby bottle in appellant's car, in fact, contained codeine. (RRIII at 27). While appellant and Johnson were in the back of the patrol car, appellant was recorded telling his uncle "to try and kick [the gun] further under the car." (RRIII at 27). Appellant and Johnson were both arrested and the car was towed. (RRIII at 28).

Sergeant Wilson testified she was assigned Abdlahi's case. While doing her investigation, she ran the description of the suspects' car, a brownish Chrysler 300. (RRIII at 12). In doing so, she discovered the same described car was involved in another case. (RRIII at 12). She also found out that a car matching the same description was towed after being located abandoned with a pistol on the floorboard. (RRIII at 13). The officer who recovered the abandoned car had inventoried the car in an attempt to find the owner. He found paperwork with "names and stuff," but could not conclude who owned the car. (RRIII at 13). One of the pieces of paper found in the car was a traffic citation with appellant's name

13

on it. (RRIII at 13). When Sergeant Wilson ran appellant's name, she found out he had arrests for robbery and murder. (RRIII at 14). In fact, he was last arrested in a Chrysler 300 just days after Abdlahi's robbery and that car had been towed to a storage lot. (RRIII at 14).

Sergeant Wilson and her partner drove to the storage lot to see if the car was still there. It was. The paper plates on the car had expired and did not indicate appellant owned the car. (RRIII at 15). They then went inside the car to "obtain any more objects out of the car to try to find the owner." (RRIII at 15). They then discovered what she believed to be Abdlahi's car keys to the Infinity and his friend's gold necklace. (RRIII at 15). They were still unsure of who owned the car and believed "it may have been purchased by one person, but was actually owned by [appellant]." (RRIII at 16). After appellant's arrest in April, he told Sergeant Wilson he owned the car. (RRIII at 18, 22).

The trial court found: (1) the search of the car on March 26th impermissible and suppressed evidence of the codeine found in the car; (2) the seizure of the abandoned gun outside the car legal and admissible; (3) the search of the car on March 29th legal; and (4) appellant's recorded statement admissible. (RRIII at 43-44).

## C. Evidence at Trial

The jury heard all of the evidence above, including evidence of the extraneous offenses (except the excluded evidence that codeine was located in appellant's car after his arrest at the club). They heard the following additional evidence as well:

Lieutenant M. Parrie testified he was assigned this robbery case. (RRIII at 100). When first reviewing the report, another officer told him that he had already picked up the video from the scene. (RRIII at 102). After speaking to Deberry, who gave him a description of the suspects, he reviewed the video. (RRIII at 103). After Sergeant Wilson gave him appellant's name as a suspect with the same "MO," he compared it to the video and concluded it was the same person. (RRIII at 104-106; State's Exhibits 4-17, 19). He then used Sergeant Wilson's photo array that included appellant's photo and showed it to Deberry. (RRIII at 107; State's Exhibit 18).

Deberry further testified that one of the two men who held a gun on her and Williams was wearing a baseball cap with a "C" on it. (RRIII at 79). In a photo array she viewed weeks later, she tentatively identified that man as appellant. (RRIII at 75, 108-09). She also identified appellant in court as that man. (RRIII at 85).

Johnson testified he was "working" with appellant. (RRIII at 87). On March 25th, they both had guns and ran up on a man and a woman at a motel and robbed them. (RRIII at 87-88). Appellant was wearing a hat with a "C" on it. (RRIII at 89). He also testified that two days before, he and appellant were at a club when they followed two guys and took their car and a gold chain. (RRIII at 90-93).

## ANALYSIS

Appellant argues the trial court abused its discretion in denying his motion to suppress Sergeant Wilson's search of the car while at the storage lot. He complains the search was not a search incident to arrest, was not based upon probable cause, and was not an inventory. Because probable cause does not stop once a car becomes immobile, and because any error in admitting the evidence seized from that search was harmless, the trial court did not err in denying appellant's motion to suppress Abdlahi's keys and necklace.

### A. Probable Cause Extended to Storage Lot

"Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *See Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would

16

lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

Furthermore, an officer's observation of contraband or evidence of a crime in plain view inside a car can be used to establish probable cause to seize the contraband or evidence and gives them probable cause to search the entire car. *Colorado v. Bannister*, 449 U.S. 1, 4, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) (per curiam); *cf. United States v. Sparks*, 291 F.3d 683, 690–91 (10th Cir. 2002) (collecting cases applying the plain view doctrine and automobile exception in combination to uphold warrantless vehicle searches and explaining "if an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle"). Probable cause can also be generated by a prior inventory search that produces contraband. *See Michigan v. Thomas*, 458 U.S. 259, 261-62, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982); *see also Ellis v. State*, 705 S.W.2d 261, 263 (Tex. App. —San Antonio 1986, no pet.) (op. on remand) (recognizing that under *Thomas* the discoveries made while conducting an inventory search can give an officer probable cause to search the rest of the car).

When police receive information from a private citizen whose only contact with police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent. *State v. Duarte*, 389 S.W.3d 349, 356 (Tex. Crim. App. 2012); *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex. Crim. App. 1982). This rule also applies if the citizen is the victim of a crime. *Nelson v. State*, 855 S.W.2d 26, 30 (Tex. App. —El Paso 1993, no pet.).[2]

Here, the police had an identification of two suspects from an inherently reliable witness who claimed appellant and Johnson had just attempted to rob him with a gun. *See Gutierrez*, 221 S.W.3d at 685; *Esco*, 668 S.W.2d at 360-61. One of the men identified to the police (appellant) was attempting to leave the scene in his car. These facts and circumstances were sufficient to warrant a prudent man in believing that the suspects had committed or were committing an offense and evidence pertaining to that crime, a gun, could be in the car. Moreover, a baby bottle suspected of containing codeine was seen in plain view in the car and was

---

[2] A detention based on facts supplied by a citizen-informer, which are adequately corroborated by the detaining officer, does not violate the Fourth Amendment. *Brother v. State*, 166 S.W.3d 255, 259 (Tex. Crim. App. 2005). Corroboration does not require the officer personally observe the conduct giving rise to a reasonable suspicion that a crime is being, has been, or is about to be committed. *Id.* at 259 n. 5 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). "Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* (citing *Alabama v. White*, 496 U.S. 325, 330–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)).

seized pursuant to an inventory search. *See Bannister*, 449 U.S. at 4; *Thomas*, 458 U.S. at 261-62. Thus, Officer Schattle had probable cause to search the car pursuant to believing evidence of a crime was within,[3] and because the observation of codeine was in plain view and was seized pursuant to an inventory search. Because Officer Schattle had probable cause to believe appellant had committed a felony that involved a weapon, and after detaining appellant shortly after the commission of the crime observed codeine in "plain view" in the appellant's car and was seized during an inventory search, the officer had probable cause to search the rest of the car for further incriminating evidence.

In *Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984), the defendant Meyers' car was impounded at the time of his arrest. A warrantless inventory search of the car was conducted, several items were seized, and the car was towed away. Around 8 hours later, a police officer conducted another warrantless search of the car while at the storage lot, which produced additional evidence. *Id.* at 381. The Supreme Court, quoting its rule in *Michigan v. Thomas*, reiterated that "'justification to conduct such a warrantless search does not vanish

---

[3] The State submits the trial court's ruling, suppressing the codeine found in the car, was in error. Regardless, the trial court did not make a ruling on the inventory search and the evidence supports the car was lawfully inventoried after appellant's arrest. Probable cause arose in three ways: believing the car contained fruits of a crime (the attempt to rob a citizen-informer/victim); codeine in plain view in the car, and/or the seizure of codeine pursuant to a valid inventory search.

once the car has been immobilized.'" *Meyers*, 466 U.S. at 382. Though the Court did not explicitly say so, it appears the evidence seized during the inventory search of Meyers' car at the time of his arrest generated probable cause that the car contained additional evidence. Under *Michigan v. Thomas*, probable cause generated by an inventory search validates a warrantless search. *Id.*, 458 U.S. at 261. The "warrantless search" in *Thomas*, as well as *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.3d 419 (1970), refers to a search based upon probable cause. *See id.*

Here, probable cause existed for the officers to search for a weapon. *See Gutierrez*, 221 S.W.3d at 685. Furthermore, once the codeine was seen in plain view, the officers had probable cause to search the rest of the car. *See Bannister*, 449 U.S. at 4. And, even if the codeine was not seen in plain view, it was seized during a proper inventory search and provided probable cause to search the rest of the car for further evidence. *See Meyers*, 466 U.S. at 382; *Thomas*, 458 U.S. at 261. Probable cause did not vanish because the car was immobilized in the storage lot. *See id.* Sergeant Wilson's search of the car, therefore, was legal.

## B. Sergeant Wilson's Search of the Car was Harmless

Even assuming Sergeant Wilson's search of the car was illegal, the result to this case was harmless. If Abdlahi's keys and his friend's necklace were seized through violation of the Fourth Amendment and should have been excluded from

evidence through appellant's motion to suppress, this Court is to reverse appellant's conviction unless it can determine beyond a reasonable doubt the admission of the evidence did not contribute to appellant's conviction. *See* TEX. R. APP. P. 44.2(a); *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010).

Prior to Sergeant Wilson's search of the car, appellant was already a suspect as his name was found on a traffic ticket in the car and a criminal history search of his name showed he was connected to several robberies and murders. Sergeant Wilson's search for the owner of the car suspected as used in several robberies or attempted robberies yielded evidence to another crime, not this crime. While this evidence was used to show appellant's *motive operandi* in committing robberies, the record shows appellant was identified in court by Deberry as the man wearing the "C" hat who robbed her. Further, Johnson testified that he and appellant were responsible for the robberies of Abdlahi and Deberry and that appellant wore a hat with a "C" on it when he robbed Deberry. It is beyond a reasonable doubt that the admission of the keys and necklace did not contribute to appellant's conviction.

Appellant's first issue presented on appeal should be overruled.

————————◆————————

## REPLY TO APPELLANT'S SECOND ISSUE PRESENTED

In his second issue presented on appeal, appellant argues the trial court erred in allowing State's Exhibit 60, a power point aid on "Form Park Crips," into evidence during his punishment phase. Appellant complains the evidence is a violation of the Confrontation Clause. Because Texas Rules of Evidence 703 and 705 contemplate the use of inadmissible evidence for an expert to use with his training and experience to form an opinion, and, assuming some evidence in the exhibit comes from testimonial hearsay, because the Confrontation Clause does not prevent witnesses from offering their independent judgments based in part on inadmissible evidence, the trial court did not err in admitting the gist of the expert's testimony in a presentation (State's Exhibit 60).

### RELEVANT FACTS & PROCEDURES

After the jury found appellant guilty as charged, appellant elected the court decide his punishment. Sergeant J. Wood testified for the State. The sergeant is assigned to the Houston Police Department's gang division and interacts with gang members on a daily basis. (RRV at 24-25). He knows appellant as a member of the Forum Park Crip criminal street gang. (RRV at 26). Forum Park Crips are a small and violent street gang that predominately hangs out in a Forum Park apartment complex. (RRV at 26). The gang has a "clear, defined organizational

22

chart" that includes appellant at the top.  (RRV at 27-28).  The sergeant compiled the information he knew about the Forum Park Crips in a "presentation" that he created and that was admitted as State's Exhibit 60.  (RRV at 28-29).  Appellant objected to State's Exhibit 60 as "compiled of hearsay" and a violation of the Confrontation Clause.  (RRV at 30).  The court overruled appellant's objections, noting the exhibit would be helpful in understanding the sergeant's testimony. (RRV at 30).

State's Exhibit 60 contains "background information" (when gang developed, where primarily located in Houston (with google map printout), and ties to other locations),  "specific locations" (3 specific addresses where the gang is known to hang out), "criminal activity" (crimes Forum Park Crip members have been tied to, including capital murder, and that their primary revenue is garnered though sale of narcotics), and "leadership" and "leadership structure" (photos of members together with their names and indicating appellant is/was third from the top).  Sergeant Wood then testified about everything contained in the exhibit. (RRV at 30-35).

### APPLICABLE AUTHORITY

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides, "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]"  U.S. CONST. amend.

VI. This protection prohibits the admission of testimonial statements unless the declarant is unavailable to testify and the accused had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Langham*, 305 S.W.3d at 575–76. The Court of Criminal Appeals has explained:

> [T]he Supreme Court has observed that an out-of-court statement, even one that falls within its definition of "testimonial" statements, is not objectionable under the Confrontation Clause to the extent it is offered for some evidentiary purpose other than the truth of the matter asserted. When the relevance of the out-of-court statement derives solely from the fact that it was made, and not from the content of the assertion it contains, there is no constitutional imperative that the accused be permitted to confront the declarant. In this context, the one who bears "witness against" the accused is not the out-of-court declarant but the one who testifies the statement was made, and it satisfies the Confrontation Clause that the accused is able to confront and cross-examine him.

*Langham*, 305 S.W.3d at 576–77 (citing *Crawford*, 541 U.S. at 59; *Tennessee v. Street*, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). The trial court's ruling admitting the evidence is reviewed under a bifurcated standard, giving deference to the court's findings regarding any pertinent historical facts but reviewing de novo the court's application of the law to those facts. *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

While recognizing Sergeant Wood was the person who created State's Exhibit 60, appellant argues the information contained within State's Exhibit 60 "was compiled from testimonial hearsay statements obtained during questioning by law enforcement."[4] *Crawford*, however, does not prevent expert witnesses from offering their judgments because they were formed in part by otherwise inadmissible evidence.

In *United States v. Palacious*, 677 F.3d 234 (4th Cir. 2012), the Fourth Circuit looked at the defendant's confrontation objection to a gang expert's testimony that relied in part on interviews with unnamed gang members and victims of gang violence. Referring to Federal Rules of Evidence 703 and 705 (allowing expert witness to base an opinion on data that includes inadmissible evidence), and assuming the expert relied on testimonial statements (which was not clear), the court concluded that the "touchstone" for determining whether an expert is giving his independent judgment or regurgitating testimonial hearsay is whether the expert applies his training and expertise to produce "an original product that can be tested through cross-examination." *See id.* at 243 (quoting *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)). After identifying the expert's training and

---

[4] Appellant's Brief at 23.

experience included "extensive gang culture training" and hundreds to thousands of interviews with gang members, his independent opinion about the "gang's history, operation, structure, practices, and symbols" was not a *Crawford* violation even if based partly on testimonial hearsay. *See id.* at 244.

Likewise, here, and utilizing similarly worded Texas Rules of Evidence 703 and 705, Sergeant Wood testified he had spent at least 5 years in a law enforcement gang unit with specialized training that included hours of gang conferences and training on recognizing gang colors, the language they use, the culture of gangs, and how to identify gang graffiti. (RRV at 24). *See* TEX. R. EVID. 703, 705. He had investigated "very many" crimes involving gangs. (RRV at 25). He further testified he interacts with gang members on a daily basis compiling information on the gang:

> For example, the Forum Park Crip area, the type of activity that was going on, being conducted criminally by the gang members over there, who was being arrested in the past, who had been charged, were they gang members, compiling all that information and going over there and having either consensual stops and conversations with people who are gang members, or conducting criminal investigations where we would contact suspects, check their gang affiliation, did they have tattoos, did they self-admit to being a gang member, were they wearing that type of clothing, were they associating with other gang members, and through that, documenting them as a criminal street gang members.

(RRV at 25). He placed this knowledge and opinions in State's Exhibit 60. State's Exhibit 60 did not violate the Confrontation Clause because it was based upon his training and experience with criminal street gangs, and specifically with Forum Park Crips, and produced an original product that could be, and was tested by cross-examination.[5] (RRV at 35-39). *See Palacious*, 677 F.3d at 234. The trial court did not err in admitting State's Exhibit 60.

Appellant's second issue presented on appeal should be overruled.

———————◆———————

---

[5] Furthermore, charts, graphs, maps, diagrams, or other exhibits prepared for courtroom use which clarify or illustrate some fact in issue may, in the trial court's discretion, be admitted into evidence. *Compare Marras v. State*, 741 S.W.2d 395, 404–05 (Tex. Crim. App. 1987), *overruled on other grounds*, 851 S.W.2d 853, 860 (1993) (videotaped re-enactment of the defendant's flight from the crime scene was admissible); *Uniroyal Goodrich Tire Co. v. Martinez*, 928 S.W.2d 64, 74 (Tex. App. —San Antonio 1995), *aff'd*, 977 S.W.2d 328 (Tex. 1998) (trial court did not abuse its discretion in admitting time line prepared by witness to illustrate the sequence of events to which he had already testified); *Mayfield v. State*, 848 S.W.2d 816, 819 (Tex. App. —Corpus Christi 1993, pet. ref'd) (diagram of a school prepared by the prosecutor and authenticated by the witness was admissible in evidence). Here, the court specifically concluded that State's Exhibit 60 would aid in understanding Sergeant Wood's testimony.

## CONCLUSION

It is respectfully submitted that all things are regular and that appellant's conviction should be affirmed.

DEVON ANDERSON
District Attorney
Harris County, Texas


/s/ *Bridget Holloway*

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
713.755.5826
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

## <u>CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE</u>

This is to certify: (a) that the word count of the computer program used to prepare this document reports that there are 5620 words in the document; and (b) that the undersigned attorney requested that a copy of this document be served to appellant's attorneys via TexFile at the following emails on June 18, 2015:

Mark C. Kratovil
Assistant Public Defender
Email: mark.kratovil@pdo.hctx.net

/s/ *Bridget Holloway*

**BRIDGET HOLLOWAY**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
713.755.5826
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net