**Douglas Joseph DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–364–CR.**

Court of Appeals of Texas, Waco.

March 20, 2002.

---

Daniel Burkeen, Groesbeck, for appellant.

Robert W. Gage, Freestone County Atty., Fairfield, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

An indictment was returned against forty-year-old Douglas Joseph Davis for (1) manufacturing methamphetamine in an amount of 400 grams or more and (2) possession with intent to deliver methamphetamine in an amount of 400 grams or more, both of which are offenses punishable by fifteen to ninety-nine years or life in prison. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp.2002).[1] It was

---

1. The amount was calculated from the total weight of liquid found in several containers at a methamphetamine lab found in Davis's trailer, which contained one percent or less of methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) ("if the amount of the con-

also alleged in the indictment that Davis had two prior convictions for aggravated robbery (while in his early twenties) and a prior conviction for possession of methamphetamine (he was thirty). At the State's election, the "manufacturing" offense alone was submitted to the jury, which convicted Davis. He elected for the court to assess punishment, pleading "true" to enhancement allegations based on the prior convictions. The court sentenced him to forty years in prison.

Davis asserts three issues on appeal, all of which pertain to the court's denial of his motion to suppress the evidence which was seized from his residence and which is the basis of the offenses for which he was charged. Hearing on the motion was held the day before trial. Specifically, he says: (1) the evidence was obtained pursuant to an illegal search and seizure of his home (a trailer); (2) the court erred in denying his requested jury instruction about illegal searches; and (3) the court erred in concluding that the seizure of the evidence was either incident to an arrest or made during a protective sweep of the premises.

We will reverse the judgment and remand the cause for a new trial.

## FACTS

The following evidence was adduced at the suppression hearing from Officers Oates and Utsey, Kathy Nabors who was Davis's girlfriend (one of two females found in Davis's trailer), and Davis. Any disputed facts are so indicated.

- Officers Oates and Utsey, dressed in their uniforms and wearing firearms in plain view, arrived at Davis's trailer on May 8, 2000, without a warrant, acting on a tip from a confidential informant that Davis was in posses-

sion of a controlled substance. Oates testified he did not believe he had probable cause for a warrant at that time. Oates and Davis were previously acquainted.

- The officers entered the trailer. The officers testified that Davis freely allowed them into the trailer. Davis testified that they pushed their way in. When the officers entered, two females (including Nabors) were in the living room sitting on the couch. Nabors testified it was her impression that the officers were not invited into the trailer by Davis; she saw Davis "stumble back."

- There was no wall between the living room and kitchen, only blankets hung to separate the two spaces. The Officers could not see into the kitchen.

- Oates asked to speak with Davis and motioned toward the kitchen. Instead, Davis led Oates into the bedroom. Oates explained he thought Davis was in possession of an illegal substance and requested to search the trailer. Davis refused to sign a consent-to-search form, told Oates he needed a warrant, and requested that the officers leave the trailer.

- Meanwhile, Utsey, who had remained in the living room, observed in plain view the butt of a marihuana cigarette in an ash tray on the floor near the two females. (Nabors testified it belonged to her.) Utsey informed Oates about the marihuana who then told Davis, who became irate, entered the kitchen, and quickly returned. (Davis denied entering the kitchen.) Davis said "just take my f——ing ass to jail" and exited the trailer. Oates conclud-

trolled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more").

ed from Davis's behavior that the marihuana belonged to him, so he followed Davis outside, arrested and handcuffed him, and read him his *Miranda* rights.

● The two females informed Utsey that they had more marihuana on their persons, and Utsey passed this information along to Oates when Oates returned into the trailer.

● Oates testified he noticed melting ice cream in a one-half gallon container in the living room and asked the two females if they wanted it placed in the freezer. When they answered affirmatively, Oates pulled back the blanket between the living room and kitchen and observed in plain view a methamphetamine lab in the kitchen. Nabors testified she brought the methamphetamine-lab materials to the trailer because she had attempted a "cook" but had made a "big mess," so she brought the materials to Davis to "straighten it out." Davis testified he tried to "fix the problem" but failed.

● For safety from a potential explosion, Oates had everyone exit the trailer. Surrounding residents were also evacuated.

● A lab team from the Texas Department of Public Safety was contacted to collect the items in the methamphetamine lab. No warrant was ever obtained.

At the conclusion of the hearing, the court denied the motion. It made written findings of fact and conclusions of law. The three conclusions of law are:

1. "Deputy David Utsey and Deputy Steven Oates, received an invitation from the defendant Doug Davis to enter the residence in Fairfield, Freestone County, Texas on May 8, 2000."

2. "The marijuana in the living room was in the officer's plain view."

3. "Any search conducted on May 8, 2000 was a search incident to arrest and/or a protective sweep."

We will also consider the trial testimony. When, as here, the defense participates in the examination of witnesses at trial on issues pertinent to a pre-trial motion to suppress, or does not participate but also does not object to the subject matter of the testimony, the defendant has consensually relitigated the suppression issue. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App.1996); *Hardesty v. State*, 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App. 1984). Therefore, the trial court's pre-trial ruling is assessed in light of the evidence at both the pre-trial hearing and at trial. *Id.*

Only Oates and a chemist testified at trial for the State. Davis called no witnesses. Additional testimony at trial by Oates was that he reentered the trailer after arresting Davis because he was concerned for Utsey's safety in that someone else might be in the trailer or there might be weapons in the trailer. But his fears subsided when he saw that Utsey "showed no adverse reactions that somebody else was there." Then, out of "courtesy," he offered to put the ice cream in the freezer. He also testified that additional marihuana was recovered from the purse of one of the females.

## STANDARD OF REVIEW

A trial court's denial of a motion to suppress is reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). There is an abuse of discretion "when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842

S.W.2d 667, 682 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

 The trial court's findings of fact are given "almost total deference," and in the absence of explicit findings, the appellate court assumes the trial court made whatever appropriate implicit findings are supported by the record. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim. App.2000); *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). However, the application of the relevant law to the facts, including Fourth Amendment search and seizure law, is reviewed *de novo*. *Carmouche*, 10 S.W.3d at 327. Also, when the facts are undisputed and we are presented with a pure question of law, *de novo* review is proper. *Oles*, 993 S.W.2d at 106. Thus, for example, when the issue to be determined on appeal is whether an officer had probable cause, "the trial judge is not in an appreciably better position than the reviewing court to make that determination." *Guzman*, 955 S.W.2d at 87. Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of matters such as reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

 However, a judicial ruling will not be reversed on appeal, even if made for the wrong reason, if the ruling is supported by the record and correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim.App.1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Calloway v. State*, 743 S.W.2d 645, 652 (Tex. Crim.App.1988). Similarly, when officers give the wrong reason for why their actions were legal under the Fourth Amendment, the case will not be reversed if the facts support a correct reason. *Williams v. State*, 726 S.W.2d 99, 100–01 (Tex.Crim. App.1986); *Esco v. State*, 668 S.W.2d 358, 366 (Tex.Crim.App.1982).

## APPLICATION

 Davis complains that his trailer was searched in violation of the Fourth Amendment and Article I, Section 9 of the Texas Constitution,[2] because (1) there was no warrant, (2) he did not give consent, (3) there was no protective sweep search, and (4) there was no search incident to an arrest. It is undisputed that there was no warrant and Davis never gave consent to a search. In addition, the two females could not give consent for Oates to have access to the kitchen because it was not their residence and there is no evidence they had authority over the premises. *E.g., State v. Derrow*, 981 S.W.2d 776, 778 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd). Finally, we give deference to the trial court's determination, from conflicting evidence, that Davis gave the officers permission to enter the trailer. *Carmouche*, 10 S.W.3d at 327–28; *Guzman*, 955 S.W.2d at 89–90. Therefore, our analysis concerns what happened after the officers entered the trailer, which might be proper under an exception to the requirements of the Fourth Amendment, specifically: (1) was there a "protective sweep" search? or (2) was there a search incident to an arrest?

### Arrest

 For there to be a protective sweep or a search incident to an arrest, there must first be a valid arrest. Oates

2. Article I, section 9 is' interpreted in a manner consistent with the Fourth Amendment, although more stringent safeguards are applied than in federal law. *E.g., Johnson v. State*, 912 S.W.2d 227, 233–34 (Tex.Crim.App. 1995).

arrested Davis outside the trailer because he suspected Davis of possessing the marihuana in the ashtray. An illegal drug can be jointly possessed with others. *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim. App.1988). Mere presence at the scene does not prove possession; there must be evidence "affirmatively linking" the accused to the contraband which shows the accused had knowledge of and control over the contraband. *Id.* Factors which have been considered affirmative links include: (1) presence when the search was executed; (2) contraband in plain view; (3) proximity to and accessibility of the contraband; (4) accused under the influence of contraband when arrested; (5) accused's possession of other contraband when arrested; (6) accused's incriminating statements when arrested; (7) attempted flight; (8) furtive gestures; (9) odor of the contraband; (10) presence of other contraband; (11) accused's right to possession of the place where contraband was found; and (12) drugs found in an enclosed place. *Gill v. State,* 57 S.W.3d 540, 544–45 (Tex.App.-Waco 2001, no pet.); *Derrow,* 981 S.W.2d at 779 (citing *Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd)).

The facts in Davis's case support six of these factors: (1) Davis was present in the trailer; (2) the marihuana was in plain view; (3) the marihuana was proximate and accessible to Davis; (6) Davis made the incriminating statement "just take me to jail"; (7) Davis left the trailer in an irate mood; (8) Davis quickly entered and then exited the kitchen; and (11) it was Davis's trailer. We find that the evidence affirmatively links Davis to the marihuana and Oates had probable cause to arrest Davis for possession of it.

### Protective Sweep Search

In *Reasor v. State,* police officers followed Reasor in his vehicle and observed him making sales of illegal drugs. *Reasor v. State,* 12 S.W.3d 813, 814 (Tex. Crim.App.2000). When Reasor pulled into the driveway of his residence, police blocked him in and arrested him. Police seized white powder laying in plain view on the dash of Reasor's car. A passenger was released after questioning. Three officers entered Reasor's residence to conduct a "protective sweep." Nothing was found, but later Reasor told officers where to find other drugs in the residence. The Court invalidated the "protective sweep." It said a " 'protective sweep' is a 'quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.' " *Id.* at 815 (quoting *Maryland v. Buie,* 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990)). "Protective sweeps" are not *per se* unreasonable under the Fourth Amendment. *Id.* at 816. However, police must have a "reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Id.* at 816 (quoting *Buie,* 494 U.S. at 336, 110 S.Ct. at 1099). The reasonableness of the suspicion or belief is evaluated under an objective standard. *Id.* at 817. Because the evidence did not support a suspicion that there was someone dangerous to the officers in the residence, the Court held that the "protective sweep" was illegal.

Here, the evidence does not support the conclusion that Oates objectively had a "reasonable, articulable suspicion" that there was someone else other than the two females in the trailer who might harm the officers. The fact that Davis had a criminal record for armed robbery fifteen to twenty years earlier and had been involved with others in the past in manufacturing methamphetamine does not demonstrate that, at the time of the incidents involved here, there was an objectively reasonable

suspicion by the officers that they were in danger from a third person. We believe that the "protective sweep" fails the *Reasor* test, where the fact that Reasor was a drug dealer and arrived home with a passenger was insufficient to establish the suspicion. *Id.* at 816. Also, the fact that Davis became upset and entered the kitchen only to quickly exit it does not support a reasonable suspicion that someone else was present. That nothing happened during that episode implies a lack of danger. The only remaining evidence is that the two females were in the trailer. But Utsey, who was armed, was watching them. Furthermore, Oates testified that after he reentered the trailer, any fears he may have had for his and Utsey's safety subsided when he saw that Utsey "showed no adverse reactions that somebody else was there." This is an admission that, based on what Oates—a law enforcement officer specially trained to deal with drug offenses—objectively observed at the scene, he did not believe the officers were in danger. Finally, Oates testified he entered the kitchen to put the ice cream into the freezer, not because he was fearful someone was there. We conclude that Oates's search of the kitchen cannot be counted as a "protective sweep." *See id.*

### Search Incident to an Arrest

When a person is arrested, officers may search his person and the area within his immediate control for weapons that might be used to harm the officers and for evidence that might be tampered with. *Morgan v. State*, 963 S.W.2d 201, 204–05 (Tex.App.-Austin 1998, no pet.) (citing *Jones v. State*, 568 S.W.2d 847, 856 (Tex.Crim.App.1978)). The area within his immediate control is "the area from within which he might gain possession of a weapon or destructible evidence." *Jones*, 568 S.W.2d at 856 (quoting *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)).

Davis was arrested outside the trailer. Oates was justified in searching Davis and the area around Davis *outside* the trailer. But Oates could not take Davis back inside the trailer, handcuffed, and use that as a justification for a search inside the trailer incident to the arrest. That result would allow an officer to take an arrestee from room to room thereby justifying a search of each room. In addition, there was no testimony from Oates that the reason he went into the kitchen was that he feared the handcuffed Davis might try to access a weapon from the kitchen or might try to get to evidence there and destroy it. To the contrary, Oates said he went into the kitchen to put the ice cream into the freezer. We conclude that the search of the kitchen was not incident to Davis's arrest. *See id.*

### Harm

We must reverse due to a constitutional error unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (stating the standard from which Rule 44.2(a) derives); *Hernandez v. State*, 60 S.W.3d 106, 2001 WL 1415274 (Tex.Crim.App. November 14, 2001) (suppression issues are reviewed for constitutional error). Here, without the evidence seized from the kitchen, the record contains no evidence of the crime. Therefore, the court's denial of the suppression motion contributed to Davis's conviction.

### Conclusion

We sustain the issues pertaining to the court's denial of the suppression motion.

### JURY CHARGE

Because of our disposition of Davis's other issues, we do not address his jury-charge issue.

**98**

## CONCLUSION

The trial court erred in not ordering the evidence seized from the kitchen suppressed. The judgment of conviction is reversed, and the cause is remanded for further proceedings consistent with this opinion.