

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00501-CR

Rudy **CORONADO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 19-12-13471-CR
Honorable Daniel J. Kindred, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 15, 2023

AFFIRMED

After the trial court denied his motion to suppress, Rudy Coronado pled nolo contendere to the offense of unlawful possession of a firearm by a felon. In one issue, he argues the trial court erred in denying his motion to suppress the firearm. We affirm.

## BACKGROUND

A grand jury indicted Coronado for the offense of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE § 46.04. Coronado moved to suppress the firearm and the trial court held an evidentiary hearing on the motion to suppress. The only witness at the suppression hearing

was Deputy United States Marshal Steven Caballero, who testified that on September 6, 2019, at 5:05 a.m., he and other officers assisted the Hondo Police Department in executing a warrant for Coronado's arrest.[1] Deputy Caballero and the other officers attended a briefing where they were told that Coronado was a member of the Bandidos motorcycle gang and that he had a felony conviction for deadly conduct. To execute the arrest warrant, Deputy Caballero and the other officers went to a house in Hondo, Texas, where they knocked on the door and waited. When no one answered, the officers forcibly entered the house and found a woman and a child in the living room. To the right of the living room was a bedroom. As the officers told the woman that they were looking for Coronado, he "poked his head around the corner from the [bed]room." The officers ordered Coronado to come into the living room with his hands up. Coronado hesitated, then complied. The officers ordered Coronado, who was naked, onto the ground and handcuffed him. Deputy Caballero and other officers entered the bedroom from which Coronado had just emerged and conducted a "real quick" protective sweep of the bedroom for officer safety. While conducting the protective sweep, the officers saw a firearm on a desk next to the bed. They did not have to move anything in the room to see the firearm. The officers then seized the firearm.

At the end of the suppression hearing, the trial court denied the motion to suppress and stated the reasons for its ruling on the record. The trial court stated that the officers in this case knew that Coronado was a "member of a criminal street gang" and "we can certainly infer that [gang members] are routinely together." It also stated that because the officers encountered a woman and a child upon entering the house, it was reasonable for them to believe that other people were in the house. The trial court concluded that the officers: (1) were lawfully in the living room

---

[1]The arrest warrant was admitted into evidence at the suppression hearing, but it is not included in the appellate record. The reporter's record from the suppression hearing indicates that Coronado's arrest warrant was for engaging in organized criminal activity.

of the house pursuant to an arrest warrant, (2) were justified in entering the bedroom to conduct a protective sweep for the officers' safety, (3) were justified in entering the bedroom to retrieve clothing for Coronado, and (4) were justified in seizing the firearm because it was in plain view.

## STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). In conducting our review, we give almost total deference to the trial court's determination of historical facts; however, we review *de novo* the trial court's application of the law to those facts. *Id*. We view the record in the light most favorable to the trial court's determination and reverse only if its ruling was arbitrary, unreasonable, or "outside the zone of reasonable disagreement." *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). We affirm the trial court's ruling if it is correct on any theory of law applicable to the case. *See id*.

## DISCUSSION

On appeal, Coronado argues that the trial court erred in denying his motion to suppress because the officers unlawfully entered the bedroom where they found the firearm in plain view.[2] Coronado maintains that the officers' entry into the bedroom was not justified either as a protective sweep or to retrieve clothing for him.

In arguing that the officers were not justified in entering the bedroom to conduct a protective sweep, Coronado relies on *Maryland v. Buie*, 494 U.S. 325 (1990). In *Buie*, the United States Supreme Court considered whether the Fourth Amendment permitted officers to conduct a

---

[2]The plain view doctrine permits an officer to seize contraband that he sees in plain sight or open view from a location where he is lawfully authorized to be. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013). "For a plain-view seizure to be lawful, the officer must have had lawful authority to be in the location from which he viewed the item, and the incriminating nature of the item must be immediately apparent." *State v. Rodriguez*, 521 S.W.3d 1, 18 (Tex. Crim. App. 2017).

protective sweep in conjunction with an in-home arrest. *Id*. at 337. As the *Buie* Court explained:

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted

to protect the safety of police officers or others." *Id*. at 327. "It is narrowly confined to a cursory

visual inspection of those places in which a person might be hiding." *Id*. The *Buie* Court further

stated:

> We also hold that as an incident to the arrest the officers could, as a precautionary matter, and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id*. at 334.

The Texas Court of Criminal Appeals applied *Buie* in *Reasor v. State*, 12 S.W.3d 813 (Tex.

Crim. App. 2000). In *Reasor*, the appellant drove up to his residence and was arrested in his

driveway. *Id*. at 815. After the appellant was arrested, the officers went into his residence to

conduct a protective sweep. *Id*. The Court of Criminal Appeals held that the protective sweep of

the appellant's home was illegal because the testifying officer did not express any facts to support

a belief that a third person was inside the home attempting to jeopardize his or the public's safety.

*Id*. at 817. "When conducting an in-home arrest, a police officer may sweep the house only if he

possesses an objectively reasonable belief, based on specific articulable facts, that a person in the

area poses a danger to that police officer or to other people in the area." *Id*. "[T]his sweep must

stay within the appropriate scope and may last long enough to dispel the reasonable suspicion of

danger." *Id*.

Here, Coronado argues that the State's evidence contained no specific articulable facts to support an objective reasonable belief that someone was in the bedroom posing a danger to them.[3] Coronado maintains that Deputy Caballero's testimony shows that the officers conducted a protective sweep as "a general and routine safety measure and [that it] was not supported with an articulated, particularized, specific reason to fear for [the officers'] safety." We disagree. Deputy Caballero testified that no one responded when the officers knocked on the front door; that upon entering the house the officers found two people in the living room; that Coronado's felony conviction for deadly conduct heightened the officers' concern for their safety; and that the officers were aware of Coronado's gang affiliation and it meant that other gang members could be present. Based on these specific facts and the rational inferences therefrom, it was objectively reasonable for the officers to believe that others were in the bedroom posing a danger to them. *See Ramirez v. State*, 105 S.W.3d 730, 742-43 (Tex. App.—Austin 2003, no pet.) (holding a post-arrest protective sweep of a garage connected to the house where the appellant was arrested was justified because the officer was reasonably concerned about his safety); *Beaver v. State*, 942 S.W.2d 626, 629-30 (Tex. App.—Tyler 1996, pet. ref'd) (holding that after the appellant was detained in the living room, a cursory sweep of non-adjoining rooms was justified when the officers saw unidentified persons going in and out of the mobile home and "did not know how many persons remained inside.").

---

[3]We note that *Buie* also holds that incident to an in-home arrest officers can "as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces *immediately adjoining* the place of arrest from which an attack could be immediately launched." *See* 494 U.S. at 334 (emphasis added). We do not apply this part of *Buie*'s holding here because the record does not establish if the bedroom from which Coronado emerged "immediately adjoined" the living room where he was arrested.

Coronado further argues that the officers' awareness of his gang membership and his felony conviction for deadly conduct should not be considered in a protective sweep analysis.[4] Coronado directs our attention to *Davis v. State*, where the Waco court of appeals held that a protective sweep of a kitchen was unlawful because the facts did not support an objective reasonable belief that there was someone in the kitchen who might harm the officers. 74 S.W.3d 90, 96-97 (Tex. App.—Waco 2002, no pet.). However, *Davis* is distinguishable from the present case. First, in *Davis*, the court of appeals noted that the appellant's prior criminal convictions, which had occurred fifteen to twenty years in the past, were too remote to show that the officers were in any danger. *Id*. Second, in *Davis*, one of the officers specifically testified that before the protective sweep occurred his fears about officer safety had subsided and that he had "entered the kitchen to put [] ice cream into the freezer, not because he was fearful someone was there."[5] *Id*. at 97. Unlike *Davis*, the evidence here showed that Coronado was a current gang member who had a pending arrest warrant for organized criminal activity. Additionally, Deputy Caballero did not testify that his fears about officer safety had subsided before the protective sweep occurred. Finally, no evidence was presented regarding the date of Coronado's deadly conduct conviction. We conclude that Coronado's current gang affiliation and his felony conviction for deadly conduct are facts that can be considered in analyzing the lawfulness of the protective sweep.

Under the facts and circumstances presented in this case, the officers' decision to conduct a quick sweep of the bedroom for officer safety did not violate the Fourth Amendment. *See Buie*,

---

[4]Coronado supports this argument with federal circuit court decisions; however, lower federal court decisions interpreting a federal constitutional right are not binding authority. *See Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002); *Vaughn v. State*, 931 S.W.2d 564, 568 n.5 (Tex. Crim. App. 1996).

[5]Similarly, in *Reasor*, the Texas Court of Criminal Appeals held that a protective sweep of the appellant's home was unlawful when in addition to "fail[ing] to express a single articulable fact necessitating a protective sweep," the officer specifically stated that he considered the driveway where the appellant's arrest took place to be "a safe place" for him, his fellow officers, and the appellant. *Reasor*, 12 S.W.3d at 817.

494 U.S. at 337 (holding that the Fourth Amendment "permits a properly limited protective sweep" when the officer "possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *Reasor*, 12 S.W.3d at 817 (holding a protective sweep was illegal when the officer "failed to express a single articulable fact necessitating a protective sweep").

Accordingly, the trial court did not err in denying the motion to suppress. Having concluded that the officers' entry into the bedroom was justified as a protective sweep, we need not address if it was justified to obtain clothing for Coronado. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

The trial court's judgment is affirmed.

Liza A. Rodriguez, Justice

DO NOT PUBLISH