

# NUMBER 13-22-00491-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

WALTER LEE BROWN III,                                      Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

## On appeal from the 36th District Court of Aransas County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Longoria
### Memorandum Opinion by Justice Benavides

Appellant Walter Lee Brown III appeals his conviction for possession of a controlled substance, penalty group one, in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). Brown was sentenced to seven years' imprisonment. By two issues, Brown contends that: (1) the evidence was insufficient to prove he knowingly or intentionally possessed

methamphetamine; and (2) the trial court inappropriately commented upon spousal privilege in front of the jury. We affirm as modified.

## I. BACKGROUND

On April 29, 2021, a grand jury indicted Brown for: (1) manufacturing or delivery of a controlled substance, penalty group one, in an amount of four grams or more but less than 200 grams, a first-degree felony, *see id.* § 481.112(d); and (2) theft of property worth $2,500 or more but less than $30,000, a state jail felony, *see* TEX. PENAL CODE ANN. § 31.03(e)(4)(A). The trial court later dismissed the theft charge without prejudice.

Trial commenced on June 7, 2022. Devon Earls, a patrol deputy with the Aransas County Sheriff's Office, testified that on June 10, 2020, he pulled over a pickup truck towing a "travel trailer" with an expired license plate. The occupants of the pickup truck were Brown and Brown's then-girlfriend, Kayla Glud. Deputy Earls confirmed that Brown held the title to the pickup truck.

According to Deputy Earls, Glud "advised that she had narcotics on her person." Deputy Earls discovered over eleven grams of methamphetamine on Glud's person and removed "a hypodermic needle or syringe from her pant[]s area." Deputy Earls testified that Sergeant William Tyler Tate arrived and assisted him in conducting the stop. Deputy Earls and Sergeant Tate then searched the pickup truck, and Sergeant Tate located an additional 2.5 grams of methamphetamine in a white box in the back seat "in reach of both the passenger and driver." Deputy Earls also discovered "around $4,000 to $5,000 cash" and "several cashier's checks that were made out [to] a different person's name."

2

The cash was located "[o]n the driver's side" and "was contained in a brown envelope with . . . Brown's name stamped onto it."

Deputy Earls testified that he spoke with Brown, who accurately described the items that appeared in the white box. Brown asked Deputy Earls "just to discard [the narcotics] and throw them away," and Brown "was basically saying [that] if [Deputy Earls] could get rid of this evidence for him, he could let [Deputy Earls] know information that could lead to a bigger drug seizure."

Stephen Nanny, an investigator with the Aransas County Sheriff's Office, testified that Glud voluntarily spoke with him on July 10, 2020. According to Investigator Nanny, Glud informed him that she and Brown "sold methamphetamine together" and that "[w]hen somebody agree[d] to buy narcotics, [Brown] would take care of it."

The State called Glud to testify. The following colloquy then took place:

| THE COURT: | All right. I think the attorneys intend to ask you some questions in the case, but it looks like you've got some conversation that you want to have with the prosecutor. |
| [GLUD]: | Yeah. I want to sign a paper. |
| THE COURT: | I'm sorry? |
| [GLUD]: | I need to sign a paper. |
| [THE STATE]: | I don't have any papers for her to sign. I think we should probably just start the questioning. |
| [GLUD]: | You're trying to get me to testify against my husband. |
| [THE STATE]: | I'm going to have to ask you a few questions about that. Okay? |

3

[GLUD]: Whatever.

THE COURT: All right.

. . . .

[THE STATE]: And you want to tell me something right now before we get started?

[GLUD]: Yeah. I am not testifying.

[THE STATE]: Okay. You're under subpoena so you don't have the option not to testify. I understand you do not want to.

The jury was present for this colloquy. The State proceeded to question Glud.

The following day, the State recalled Glud. The following exchange took place:

[THE STATE]: Are you saying that you're currently married to Walter Brown, III?

[GLUD]: Yes.

[THE STATE]: Okay. So I'm going to ask you a little bit about that. Did you go and receive a marriage license from the Court?

[GLUD]: Yes.

[THE STATE]: Okay. When was that?

[GLUD]: In November.

. . . .

[THE STATE]: November of 2021?

. . . .

[GLUD]: Yes.

. . . .

4

| | |
|---|---|
| [THE STATE]: | Your Honor, under Texas Rules of Evidence 504(b)(4)([B]) she is not able to refuse to testify about anything that occurred prior to their marriage. |
| THE COURT: | The date of your marriage was in November of 2021? |
| [GLUD]: | Yes. |
| THE COURT: | The date of the offense alleged in this case is June 1st, 2020—or, excuse me, June 10, 2020? |
| [THE STATE]: | Yes, [Y]our Honor. |
| THE COURT: | That predates the marriage. You may continue with your examination. |

Again, the jury was present during this exchange. The State proceeded to question Glud about whether she made certain statements to police on June 10, 2020, and July 1, 2020. Glud denied saying that she and Brown did meth together, that Brown had recently started selling drugs, or that she had never seen the white box before. The State asked Glud whether she spoke to Brown the evening before testifying and whether she spoke to him about her testimony. Without reinvoking her spousal privilege, Glud agreed that she spoke to Brown the previous evening, but denied speaking to him about her testimony. Glud ultimately testified that she put the drugs in the white box without Brown's knowledge.

Sergeant Tate testified that he discovered the white box containing a "small quantity of methamphetamine" in the pickup truck "in the backseat directly in the middle" on June 10, 2020. When Sergeant Tate questioned Glud "about the narcotics that were located inside th[e] white box, she said she didn't know anything about those at the time."

5

After being admonished, Brown testified in his own defense. According to Brown, the money in the truck was going to be used as a down payment for the trailer that he was towing. Brown explained that he was employed at the time with Bullet Production Services out of Odessa, Texas, and earned "somewhere around $9 to $12,000 a month." Brown testified that the recovered drugs were not his. He denied having any knowledge of the drugs discovered on Glud's person or the drugs discovered in the white box. He also denied selling drugs, using drugs, or having a history of using drugs. However, he acknowledged that: (1) the white box in which police discovered narcotics was his; (2) he had been previously convicted for possession of methamphetamine with intent to deliver in March of 2016; and (3) on June 10, 2020, he was on supervised release for a federal conviction of possession of marijuana.

The jury found Brown guilty of the lesser-included offense of possession of a controlled substance, penalty group one, in an amount of one gram or more but less than four grams, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). The trial court sentenced Brown to seven years' imprisonment, and this appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Brown argues the evidence was insufficient to establish he intentionally or knowingly possessed methamphetamine.

## A.    Applicable Law & Standard of Review

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct

jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). In reviewing the sufficiency of the evidence, we consider all the evidence presented in the light most favorable to the verdict to determine whether the trial court was justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The essential elements in this case are: (1) the defendant exercised care, custody, control or management over the controlled substance; and (2) the defendant knew the substance was contraband. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (providing generally that "a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1," including methamphetamine).

"To establish the first element, the State must prove that the defendant's connection with the controlled substance is more than just fortuitous." *Medina*, 565 S.W.3d at 873. "Mere presence at the location where drugs are found is . . . insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202

S.W.3d 158, 162 (Tex. Crim. App. 2006). Additionally, "possession need not be exclusive," so long as there are affirmative links between the defendant and the drug. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Thus, a defendant must "be affirmatively linked with the drugs he allegedly possessed, but this link need no[t] . . . be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt." *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). Some of the factors "which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession'" include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive, but the combined logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162. "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a

8

reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

**B.    Analysis**

The evidence before the jury included several affirmative links connecting Brown

to the methamphetamine. We summarize the evidence supporting the jury's finding:

- Brown was present when the drugs were found, *see Evans*, 202 S.W.3d at 162 n.12;

- the white box containing methamphetamine was equally accessible to both Brown and Glud, *see id.*;

- Brown acknowledged the white box was his and Glud denied having any knowledge of the white box's existence, *see id.*;

- Brown reportedly asked Deputy Earls to discard the recovered drugs in exchange for information on where additional drugs could be located, *see id.*; *Davis v. State*, 74 S.W.3d 90, 96 (Tex. App.—Waco 2002, no pet.) (noting that "just take me to jail" was an incriminating statement affirmatively linking appellant to contraband);

- as the owner of the pickup truck, Brown had the right to possess the place where the drugs were found, *see Barbosa v. State*, 537 S.W.3d 640, 646 (Tex. App.—San Antonio 2017, no pet.) (considering that "[t]he record clearly supports Barbosa had the right to possess the place where the drugs were found" when analyzing the sufficiency of the evidence to support a knowing possession);

- approximately $5,000 was found in an envelope with Brown's name on it, *see Torres v. State*, 466 S.W.3d 329, 333–34 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (concluding that evidence of $2,225 found in the appellant's pocket had "some probative value supporting an inference that appellant obtained the money in conjunction with distributing drugs"); and

- although she provided contradictory testimony at trial, law enforcement officers testified that Glud confessed that she and Brown sold methamphetamine together, *see Brooks v. State*, 634 S.W.3d 745, 748 (Tex. Crim. App. 2021) (explaining that we resolve "any ambiguities in the evidence in the prosecution's favor").

Brown primarily relies on the absence of certain affirmative links in arguing that the jury's verdict was not supported by sufficient evidence. For instance, the methamphetamine was not in plain view, Brown did not appear to be under the influence, and no odor was emanating from the vehicle. *See Evans*, 202 S.W.3d at 162 n.12. But "[t]he absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (citing *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976)).

Based on the combined logical force of the affirmative links present in this case, we conclude the evidence was legally sufficient to establish that Brown intentionally or knowingly possessed methamphetamine. *See Evans*, 202 S.W.3d at 162. We overrule his first issue.

### III. SPOUSAL PRIVILEGE

By his second issue, Brown contends that the trial court's discussion and determination of Glud's spousal privilege invocation in front of the jury was improper and prejudicial, especially without a limiting instruction on the matter.

### A. Standard of Review & Applicable Law

"The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." TEX. R. EVID. 104(a). "In a criminal case, an accused's spouse has a privilege not to be called to testify for the state." *Id.* R.

10

504(b)(1). However, the privilege does not apply "[i]f the spouse is called to testify about matters that occurred before the marriage." *Id.* R. 504(b)(4)(B).

"To the extent practicable, the court must conduct a jury trial so that the making of a privilege claim is not suggested to the jury by any means." *Id.* R. 513(c). Except in certain situations not applicable here, "neither the court nor counsel may comment on a privilege claim—whether made in the present proceeding or previously—and the factfinder may not draw an inference from the claim." *Id.* R. 513(a). This is because a "spouse's invocation of privilege in front of the jury, without more, almost necessarily compels the jury to draw an inference adverse to the defendant." *Johnson v. State*, 803 S.W.2d 272, 282 (Tex. Crim. App. 1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991). If we determine that a trial court improperly commented on certain evidence, "we address harm, using the standard for non-constitutional harm set forth in Texas Rule of Appellate Procedure 44.2(b)." *Moore v. State*, 624 S.W.3d 676, 681 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd); *see* TEX. R. APP. P. 44.2(b).

## B. Analysis

Brown does not dispute that Glud's claim of spousal privilege did not apply to the events of June 10, 2020, and July 10, 2020. And although Brown argues that it was improper for the State to question Glud about a conversation she had with Brown on the eve of the second day of her testimony, Glud did not reassert her claim of spousal privilege in response to these questions. *See* TEX. R. EVID. 504(b)(3) (providing who may

assert a claim of spousal privilege).

We note that Brown did not object to the State calling Glud as a witness, nor did he object to the trial court's failure to conduct a hearing on Glud's claim of spousal privilege outside the presence of the jury. In *Johnigan v. State*, the court of criminal appeals held that "the State commits reversible error by calling the defendant's wife, thereby forcing him to object in the presence of the jury, when such action is done in such a manner as to convey to the jury the impression that the wife, if allowed to testify, would rebut defensive testimony previously given in the case." 482 S.W.2d 209, 210–11 (Tex. Crim. App. 1972). In that situation, "appellant's failure to object cannot constitute a waiver." *Id.* at 211. *But see Rodriguez v. State*, No. 05-95-01356-CR, 1997 WL 527843, at *9 (Tex. App.—Dallas Aug. 27, 1997, pet. ref'd) (mem. op. on reh'g, not designated for publication) ("Rodriguez argues the trial court should have conducted a hearing outside the presence of the jury as to the applicability and existence of the privilege. However, the record reveals Rodriguez never objected to the trial court's failure to hold a hearing outside the presence of the jury on the applicability of the privilege. Accordingly, we conclude Rodriguez waived any error in the trial court's failure to hold such a hearing.")

Our sister court recognized over two decades ago that "*Johnigan* controlled while article 38.11 [of the former Texas Rules of Criminal Evidence] remained viable. With the advent of Texas Rule of Evidence 504, the extent of its authority is questionable for several reasons." *Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App.—Amarillo 1999, pet. ref'd). Nonetheless, our sister court ultimately distinguished *Johnigan* rather than

conclude that it had been impliedly abrogated by statute. *Id.* at 921.

Assuming without deciding that Brown was not required to object to the invocation and discussion of Glud's spousal privilege in front of the jury, we nevertheless conclude that no harmful error occurred. "[W]hile claims of privilege *should* be made 'without the knowledge of the jury,' Texas Rule of Evidence 513 does not require that they be so asserted." *Id.* at 919. In a matter involving the invocation of the Fifth Amendment right to not self-incriminate, the court of criminal appeals held, "Because the government could have sought to compel the defendant to testify, there was no error in allowing the jury to hear the defendant invoke the privilege." *Coffey v. State*, 796 S.W.2d 175, 178 (Tex. Crim. App. 1990); *see id.* at 179 ("To the extent that [the] State could have sought to compel Kalmbach's testimony, in lieu of allowing her to assert a non-existent privilege, appellant was not prejudiced."). Similarly, in a case involving spousal privilege specifically, our sister court held that "no error attached to the fact that [wife] invoked her spousal privilege in the presence of the jury as she was not entitled to the privilege based upon the trial court's ruling." *McDuffie v. State*, 854 S.W.2d 195, 213 (Tex. App.—Beaumont 1995, pet. ref'd). And in dicta, the Dallas Court of Appeals stated that "since no [clerical] privilege exists, no error occurred when the trial court heard the [claim of privilege] in the jury's presence." *Rodriguez*, 1997 WL 527843 at *9.

This reasoning extends to this case. Because Glud's claim of spousal privilege did not apply when she asserted it, no harm resulted from the trial court's determination of the claim in front of the jury. *See id.*; *see also Coffey*, 796 S.W.2d at 179; *McDuffie*, 854

13

S.W.2d at 213. Further, to the extent that Brown complains that no instruction was given to the jury concerning spousal privilege, we note that Brown did not request such an instruction. *See* TEX. R. EVID. 513(d) (providing that a trial court is required to instruct the jury that it is forbidden from drawing a negative inference from a privilege claim "on request of a party"). We overrule Brown's second issue.[1]

## IV.    MODIFICATION OF JUDGMENT

We do note, however, that the trial court's judgment contains a clerical error. Specifically, the trial court's judgment reflects that the jury found Brown guilty of violating § 481.112(d) of the health and safety code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (making it an offense to knowingly manufacture, deliver, or possess with intent to deliver a controlled substance, penalty group one, in an amount of four grams or more but less than 200 grams). However, the record reflects that Brown was found guilty of the lesser-included offense under § 481.115(c) of the health and safety code. *See id.* § 481.115(c) (making it an offense to knowingly or intentionally possess a controlled substance, penalty group one, in an amount of one gram or more but less than four grams).

---

[1] However, we caution that it seems unlikely a trial judge will always know whether a witness's claim of privilege is valid or invalid at the moment it is asserted. And it may often be difficult, if not impossible, to walk back the harm caused by discussing and determining a claim of privilege in front of the jury. Therefore, when confronted with a Schrödinger's claim of privilege—in other words, when a witness's claim of privilege is, theoretically at least, both valid and invalid—it is the prudent trial judge who conducts a hearing outside the presence of the jury to resolve the issue. *See San Fratello v. United States*, 343 F.2d 711, 712 (5th Cir. 1965) (op. on reh'g) (explaining that "courts have always frowned on the practice of compelling a spouse of an accused to claim testimonial privilege in the presence of the jury" and that "any genuine doubt about the availability of such testimony to the prosecution can always be settled by a preliminary interrogation of the witness under oath in the absence of the jury").

"This court has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and the nature of the case may require." *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We therefore modify the trial court's judgment to reflect that the jury found Brown guilty of violating § 481.115(c) of the Texas Health and Safety Code. *See id.*; TEX. R. APP. P. 43.2(b).

## V.    CONCLUSION

We affirm the trial court's judgment as modified.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
27th day of July, 2023.

15